UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBERT JAMES McCORMACK,

               Petitioner,

    v.

TERESA BALDRIDGE,

               Respondent.

Case No. 1:10-CV-00289-EJL

**MEMORANDUM DECISION AND ORDER**

Pending before the Court is Respondent's Motion for Summary Dismissal, with supporting Reply. (Dkt. 25, 28.) Petitioner requested that he be provided with a copy of the state court record, which Respondent has done. (Dkt.19, 33.) Petitioner has filed a "Demur Response," a "Point of Clarification" (sur-reply), and a supplemental "Adjunct to Demur, Response & Request." (Dkt. 27, 29, 34.) The Motion for Summary Dismissal is now fully briefed.

Having fully reviewed the record, including the state court record, and having considered all of the filings of the parties, the Court finds that the facts and legal arguments have been sufficiently provided in the briefs and record, and that the decisional process would not be significantly aided by oral argument. Therefore, in the interest of avoiding delay, the Court shall decide this matter on the written motions, briefs and

**MEMORANDUM DECISION AND ORDER - 1**

record without oral argument. D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order.

## BACKGROUND

While Petitioner was on parole for a D.U.I. conviction, he pleaded guilty to and was convicted of delivery of a controlled substance in a state criminal action in the Second Judicial District Court of Idaho. The present Petition for Writ of Habeas Corpus challenges only the delivery conviction and sentence. The conviction was the result of a controlled drug buy involving an informant that was planned by law enforcement officers, in which Petitioner sold his own prescription medication to the informant. Petitioner's judgment of conviction was entered on October 25, 2006. (State's Lodging A-1.)

Petitioner filed a direct appeal, contending that the trial court abused its discretion by imposing an excessive sentence. (State's Lodging B-2.) The Idaho Court of Appeals affirmed the trial court's sentence, and the Idaho Supreme Court denied the petition for review. (State's Lodging B-4 to B-7.)

Petitioner filed a first petition for post-conviction relief alleging that (1) his trial counsel was ineffective for failing to attempt to suppress evidence that was obtained in violation of the Fourth Amendment, and by failing to disqualify the trial judge; (2) Petitioner was entitled to a "change of venue" because the trial judge represented him as a public defender "a few years back"; (3) the police or prosecutor withheld information favorable to him, contrary to *Brady v. Maryland*, 373 U.S. 83 (1963); and (4) the trial judge had a conflict of interest. (State's Lodging C-1, pp.2-3.)

MEMORANDUM DECISION AND ORDER - 2

After the state district judge dismissed the post-conviction petition, Petitioner appealed only the dismissal of the change of venue and judicial conflict of interest claims (Claims (2) and (4), above.). The Idaho Court of Appeals affirmed dismissal of the two claims. (State's Lodging D-5.) Petitioner did not file a petition for review before the Idaho Supreme Court. (State's Lodging D-6, Remittitur from Court of Appeals.)

Petitioner filed a successive post-conviction relief petition in state court, and an amended successive petition through counsel. (State's Lodging E-1.) Petitioner again brought the same claims from his first post-conviction petition that the police or prosecutor withheld favorable evidence and that his trial counsel was ineffective; he also brought a new claim that his counsel in the first post-conviction action was ineffective for failing to object to the inadequacy of the state's grounds for summary dismissal and for filing an untimely brief in opposition to the State's motion for summary dismissal. (State's Lodging E-1.) The trial court summarily dismissed the claims, concluding that McCormack failed to show that his repeated claims were inadequately raised in the first post-conviction petition, or that his first post-conviction counsel had been ineffective. (*Id.*)

Petitioner filed an appeal, and the Idaho Court of Appeals affirmed the trial court's summary dismissal of the successive post-conviction petition. (State's Lodgings F-1 to F-5.) The Idaho Supreme Court denied the petition for review. (State's Lodging F-8.)

Petitioner filed this federal habeas corpus action on July 21, 2011, while the successive post-conviction appeal was still pending. The Court stayed proceedings

**MEMORANDUM DECISION AND ORDER - 3**

pending completion of that case, and re-opened this case upon Petitioner's notification to the Court that the state court proceedings had concluded. (Dkt. 12, 13, 16.)

**REVIEW OF MOTION TO DISMISS**

**1.      Standard of Law for Summary Dismissal**

Rule 4 of the Rules Governing § 2254 Cases authorizes the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." In such case, the Court construes the facts in a light most favorable to the petitioner. It is appropriate for the Court to take judicial notice of court dockets from state court proceedings. Fed. R. Evid. 201(b); *Dawson v Mahoney*, 451 F.3d 550, 551 (9th Cir. 2006).

**2.      Standard of Law for Procedural Default**

Habeas corpus law requires that a petitioner "exhaust" his state court remedies before pursuing a claim in a federal habeas petition. 28 U.S.C. § 2254(b). To exhaust a claim, a habeas petitioner must fairly present it to the highest state court for review in the manner prescribed by state law. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Unless a petitioner has exhausted his state court remedies relative to a particular claim, a federal district court may deny the claim on its merits, but it cannot otherwise grant relief on unexhausted claims. 28 U.S.C. § 2254(b).

The petitioner can satisfy the exhaustion requirement by showing that (1) he has "fairly presented" his federal claim to the highest state court with jurisdiction to consider

**MEMORANDUM DECISION AND ORDER - 4**

it (proper exhaustion); or (2) that he did not present the claim to the highest state court, but no state court remedy is available when he arrives in federal court (improper exhaustion). *Johnson v. Zenon*, 88 F.3d 828, 829 (9th Cir. 1996) (citations omitted).

To exhaust a habeas claim properly, a habeas petitioner must "invok[e] one complete round of the State's established appellate review process," *O'Sullivan v. Boerckel*, 526 U.S. at 845, giving the state courts a full and fair opportunity to correct the alleged constitutional error at each level of appellate review. *See Baldwin v. Reese*, 541 U.S. 27, 29 (2004). Improperly exhausted claims are deemed "procedurally defaulted." Procedurally defaulted claims include those within the following circumstances: (1) when a petitioner has *completely failed* to raise a particular claim before the Idaho courts; (2) when a petitioner has raised a claim, but has failed to fully and fairly present it as a *federal* claim to the Idaho courts, as discussed directly above; or (3) when the Idaho courts have rejected a claim on an independent and adequate state procedural ground. *See Martinez v. Klauser*, 266 F.3d 1091, 1093-94 (9th Cir. 2001) (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)).

## 3.    Discussion of Procedural Default

Petitioner's Amended Petition for Writ of Habeas Corpus (Dkt. 13-2) contains three claims that can be liberally construed as follows: (1)(a) he was subject to an illegal search in violation of the Fourth Amendment, (1)(b) his trial counsel was ineffective for failing to raise a Fourth Amendment issue; and (2) the State violated his Fourteenth Amendment due process and equal protection rights by withholding evidence favorable to

him under *Brady v. Maryland*. (Dkt. 13-2; 16, pp. 1-2.) The Court will review whether Petitioner presented each of these claims to the Idaho Supreme Court in a procedurally proper manner.

### A.     *Claim 1(a): Fourth Amendment Illegal Search and Seizure Claim*

Claim 1(a) is that Petitioner was subject to a warrantless search and illegal wiretapping in violation of the Fourth Amendment. (Dkt. 27, p. 4.) This claim was not brought in the direct appeal or in either of the post-conviction actions. As a result, the claim was never brought before the Idaho Supreme Court. Because the time to do so has expired, the claim is procedurally defaulted and cannot be heard in this action absent a showing of cause and prejudice or a miscarriage of justice.

### B.     *Claim 1(b): Failure of Counsel to Raise Fourth Amendment Claim*

Claim 1(b) is that Petitioner's trial counsel was ineffective for failing to raise a Fourth Amendment suppression issue during pretrial proceedings, instead of allegedly manipulating and coercing Petitioner into pleading guilty. (Dkt. 27, p. 4.) Petitioner raised a similar claim in his first post-conviction action, that his trial counsel was ineffective for failing to suppress evidence on the confidential informant, due to an illegal search and seizure. (State's Lodging C-1, pp. 2-3.) After dismissal of the first post-conviction application, Petitioner raised only limited claims on appeal: that trial counsel was ineffective for not seeking disqualification of the judge and a change of venue, and that the trial court had a conflict of interest. (State's Lodging D-2.) After the Idaho Court of Appeals affirmed dismissal of the claims, Petitioner did not file a petition for review.

**MEMORANDUM DECISION AND ORDER - 6**

Petitioner attempted to bring his claims again in a successive post-conviction action, but Idaho Code § 19-4908 sets forth a pre-requisite to having such claims heard on the merits:

> All grounds for relief available to an applicant under [the Uniform Post-Conviction Procedure Act] must be raised in his original, supplemental, or amended application. Any ground finally adjudicated…may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original, supplemental, or amended application.

(*See* State's Lodgings E-1; F-5, p. 4.)

The state district court found that Petitioner did not meet this standard, concluding, "McCormack has failed to meet his burden of showing his reasserted claims were inadequately raised the first time, especially where he chose note to appeal the original dismissal of the claims." (State's Lodging E-1, p. 64.) The Idaho Court of Appeals agreed. (State's Lodging F-5.) Accordingly, Petitioner's claims were not heard on the merits in the second post-conviction action because of the state procedural bar, the adequacy and independence of which is discussed at length below.

Therefore, Claim 1(b) is procedurally defaulted because it was not presented to the Idaho Supreme Court for review in the first post-conviction action, and it was found to be procedurally barred in the second action. Because there is no appropriate vehicle by which Petitioner could now bring this claim, it is procedurally defaulted and cannot be heard on the merits in this action absent a showing of cause and prejudice or a miscarriage of justice.

**MEMORANDUM DECISION AND ORDER - 7**

C.      *Claim 2: State's Withholding of Favorable Evidence in Violation of the Fourteenth Amendment Due Process and Equal Protection Clauses*

Claim 2 is that the State intentionally withheld favorable evidence from Petitioner during state criminal proceedings, violating *Brady*, which is a Fourteenth Amendment Due Process claim; in addition, Petitioner has characterized this as an equal protection claim. (Dkt. 13-2; Dkt. 27, p. 5.) Petitioner alleges that the State failed to provide him with the police report, statements of State's witnesses, and the warrants for the search and seizures. (State's Lodging F-7.)

This claim meets the same fate as Claim 1(b), directly above. While Petitioner raised a *Brady* claim in the first post-conviction action (State's Lodging C-1, p. 2), he appealed only the claims that trial counsel was ineffective for not seeking disqualification of the judge and a change of venue, and that the trial court had a conflict of interest. (State's Lodging D-2.) Thus, the first post-conviction action did not properly exhaust the *Brady* claim.

Petitioner again raised the *Brady* claim in his successive post-conviction action, but the trial court did not address the merits of the claim because Petitioner failed to show that it was raised inadequately in the first petition, such that he should be permitted to bring it again, pursuant to Idaho Code § 19-4908. (*See* State's Lodging E-1.)

The Idaho Court of Appeals likewise declined to reach the merits of the *Brady* claim based on I.C. § 19-4908, and instead addressed and rejected Petitioner's procedural

**MEMORANDUM DECISION AND ORDER - 8**

argument that the trial court failed to give him adequate notice of its dismissal of his successive petition claims. (State's Lodging F-5.)

**D.      *Adequate and Independent State Procedural Bar***

The next issue is whether the bar relied upon by the state district court, Idaho Code § 19-4908, is an adequate and independent state procedural bar to prevent this Court from hearing the merits of Petitioner's claims. In *Martinez v. Klauser,* 266 F.3d 1091, 1093-94 (9th Cir. 2001), the United States Court of Appeals for the Ninth Circuit clarified: "'In order to constitute adequate and independent grounds sufficient to support a finding of procedural default, a state rule must be clear, consistently applied, and well-established at the time of the petitioner's purported default.'" *Id.* at 1093-94 (quoting *Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994)). Particularly, the *Martinez v. Klauser* Court determined that where there is "an absence of prior authority supporting the [state court's] decision" and the decision appears "contrary to [state] law," such a state court decision does *not* rest on a "clear, consistently applied, and well-established" state procedural rule, and the procedural default may *not* be applied to bar consideration of the merits of a petitioner's claim in a federal habeas corpus action. *Id.*

The procedural bar is independent of federal law if there is no indication in the record that the state court considered any federal issue in determining the issue. *See Zichko v. Idaho*, 247 F.3d 1015, 1021 (9th Cir. 2001).

In its review of Idaho law, the Court finds no consistent departures from the statute's command that, unless an issue is adequately raised in the first post-conviction

**MEMORANDUM DECISION AND ORDER - 9**

action, a petitioner may not bring it in the second post-conviction action. In *Palmer v. Dermitt*, 635 P.2d 955 (1981), the Idaho Supreme Court addressed the scope of I.C. § 19-4908, holding that successive post-conviction applications are prohibited only "in those cases where the petitioner 'knowingly, voluntarily and intelligently' waived the grounds for which he now seeks relief, or offers no 'sufficient reason' for the omission of those grounds in his 'original, supplemental or amended petition.'" *Id*. at 957 (quoting the statute).

This rule was applied in *Hooper v. State*, 908 P.2d 1252 (Idaho Ct. App. 1995). There, the Idaho Court of Appeals held that the "district court properly denied Hooper's second application for post-conviction relief on the ground that it was prohibited under Idaho Code § 19–4908." *Id*. at 1258.

Other cases have emphasized the importance of this rule. In *Parsons v. State*, 745 P.2d 300 (Idaho Ct. App. 1987), the Idaho Court of Appeals reiterated:

> [A]n applicant for post-conviction relief should raise all issues and claims in the original application. I.C. § 19-4901(b). Supplements and amendments to the original application are permissible. I.C. § 19-4908. However, piece-meal applications are not favored and may invoke waiver and forfeiture provisions set forth in the Idaho Post-Conviction Procedure Act. See, e.g., I.C. §§ 19-4901(b), 19-4908.

*Id*. at 305.

Following this rule, in *Hernandez v. State*, 992 P.2d 789 (Idaho Ct. App. 1999), the Idaho Court of Appeals found that a pro se petitioner *had* met the requirements of I.C. § 19-408, with the following actions, and thus could proceed on a successive petition:

**MEMORANDUM DECISION AND ORDER - 10**

> Hernandez, in this, his second post-conviction relief action, asserts that the sole reason his claims for post-conviction relief have remained unadjudicated is because of the ineffectiveness of his initial post-conviction counsel. In support of his second application, Hernandez has alleged specific facts which he contends were known to his counsel in the first post-conviction case and which, had they been presented by his counsel, would have prevented the summary dismissal of that first action. For the purposes of this appeal, the state has not disputed that Hernandez has alleged facts which, if proven, would constitute sufficient reason under I.C. § 19-4908 for the allowance of a successive application.

992 P.2d at 793-94. Likewise, in *Baker v. State*, 128 P.3d 948, 957 (Idaho Ct. App. 2005), the Court of Appeals required the district court to consider the statutory requirements for successive petitions to determine if a petition should be dismissed; in other words, the instruction to the lower courts was that, so long as the trial court addresses the statutory requirements and rejects a successive post-conviction application on adequate statutory grounds, application of the procedural bar is appropriate. These cases show that the procedural bar is being evenly applied to all cases.

This particular procedural bar is not intertwined with federal law, but is a state procedural rule governing state post-conviction applications; hence, the rule is also independent. Accordingly, the Court concludes that Petitioner's claims are barred by procedural default.

**4.     Law Governing Cause and Prejudice**

If a petitioner's claim is procedurally defaulted, the federal district court cannot hear the merits of the claim unless a petitioner meets one of two exceptions: a showing of adequate legal cause for the default and prejudice arising from the default; or a showing

**MEMORANDUM DECISION AND ORDER - 11**

of actual innocence, which means that a miscarriage of justice will occur if the claim is not heard in federal court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Schlup v. Delo*, 513 U.S. 298, 329 (1995).

To show "cause" for a procedural default, a petitioner must ordinarily demonstrate that some objective factor external to the defense impeded his or his counsel's efforts to comply with the state procedural rule at issue. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). To show "prejudice," a petitioner bears "the burden of showing not merely that the errors [in his proceeding] constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire [proceeding] with errors of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

If a petitioner points to an instance of ineffective assistance of counsel during direct appeal that prevented the petitioner from properly exhausting his claims, he cannot rely on that instance unless he has first exhausted that particular ineffective assistance of counsel claim. If a petitioner has not exhausted any ineffective assistance of counsel claim, then he cannot rely on such a claim for "cause" in a "cause and prejudice" argument. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (ineffective assistance of counsel cannot serve as cause for the default of another claim unless the ineffective assistance of counsel claim is not itself procedurally defaulted or cause and prejudice for the default of the ineffective assistance claim can be shown).

A petitioner does not have a federal constitutional right to effective assistance of counsel during state post-conviction proceedings. *Pennsylvania v. Finley*, 481 U.S. 551

**MEMORANDUM DECISION AND ORDER - 12**

(1987); *Bonin v. Vasquez*, 999 F.2d 425, 430 (9th Cir. 1993). As a result, the general rule is that any errors of his counsel during the post-conviction action cannot serve as a basis for cause to excuse Petitioner's procedural default of his claims. *See Coleman v. Thompson*, 501 U.S. 722, 752 (1991).

The holding of *Martinez v. Ryan*, 132 S.Ct. 1309 (2012), established a "limited qualification" to the *Coleman* rule. *Id*. at 1319. In *Martinez*, the court held that inadequate assistance of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." *Id*. at 1315. The *Martinez* Court explained that the limited exception was created "as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim." *Id*. at 1318.

In Idaho, the post-conviction setting is the "preferred forum for bringing claims of ineffective assistance of counsel," although in limited instances such claims may be brought on direct appeal "on purported errors that arose during the trial, as shown on the record"( as opposed to matters arising outside the record). *Matthews v. State*, 839 P.2d 1215, 1220 (Idaho 1992). Thus, in Idaho, *Martinez* can be applied to ineffective assistance of trial counsel claims arising from Idaho state court convictions and sentences, where the post-conviction setting was the first forum in which the ineffective assistance of trial counsel claim based on matters arising outside the record could have been brought and developed in an evidentiary hearing. *See Matthews*, 839 P.2d at 1220.

**MEMORANDUM DECISION AND ORDER - 13**

The *Martinez* Court explained that its holding was based on "equitable" rather than "constitutional" grounds, and emphasized that it was not to be applied generally to procedural default circumstances:

> The rule of *Coleman* governs in all but the limited circumstances recognized here. The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.... It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons.

*Id.* at 1320 (citations omitted).[1]

The Ninth Circuit has summarized the *Martinez* test as follows: "a reviewing court must determine whether the petitioner's attorney in the first collateral proceeding was ineffective under *Strickland*,[2] whether the petitioner's claim of ineffective assistance of trial counsel is substantial, and whether there is prejudice." *Sexton v. Cozner*, 679 F.3d 1150, 1159 (9th Cir. 2012) (footnote added). Under *Strickland*, a petitioner must show that his counsel's performance was both unreasonably deficient and that the defense was actually prejudiced as a result of counsel's errors. *Strickland*, 466 U.S. at 684. In *Sexton*,

---

[1] The *Martinez* Court also reiterated that (1) § 2254(i) specifically provides that "incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in proceedings arising under section 2254," *id*. at 1320, and (2) its holding did not resolve the question of whether a prisoner has a right to effective counsel in collateral proceedings that provide the first occasion to raise a claim of ineffective assistance of trial counsel. *Id*. at 1315.

[2] *Strickland v. Washington*, 466 U.S. 668 (1984).

**MEMORANDUM DECISION AND ORDER - 14**

the court reiterated: "Counsel is not necessarily ineffective for failing to raise even a nonfrivolous claim, so clearly we cannot hold counsel ineffective for failing to raise a claim that is meritless." 679 F.3d at 1157 (citing *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009).

Under *Strickland*, there is a strong presumption that an attorney performed within the wide range of professional competence, and the attorney's performance will be deemed deficient only if it fell below an objective standard of reasonableness measured under prevailing professional norms. *Strickland*, 466 U.S. at 689, 694. To prove prejudice, the petitioner must demonstrate that there is a reasonable probability that, but for counsel's unreasonable errors, the result of the proceeding would have been different. *Id*. at 694. "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Id*. at 689. As a result, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter*, 131 S.Ct. 770, 778 (2011) (internal quotations and citation omitted).

The application of the *Strickland* test in this instance means that Petitioner is required to show that counsel's representation during the post-conviction proceeding was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on a claim of ineffective assistance of trial counsel in the state post-conviction matter. This standard is a high one. Stated another way, to

**MEMORANDUM DECISION AND ORDER - 15**

overcome procedural default under *Martinez*, the petitioner must show that "[post-conviction relief] counsel's failure to raise the claim that trial counsel was ineffective was an error "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and caused [the petitioner] prejudice." *Sexton*, 679 F.3d at 1157 (citing *Strickland*, 466 U.S. at 687).

**5.    Discussion of Cause and Prejudice**

The Court liberally construes Petitioner's arguments on cause and prejudice to ensure that all potential grounds for cause and prejudice have been considered.

### A.    *Ineffective Assistance of Direct Appeal Counsel*

Petitioner first seems to argue that he instructed his direct appeal counsel to present his claims on direct appeal, but his direct appeal counsel chose to present only an abuse of discretion sentencing claim. (Dkt. 27, p. 6.) This argument is governed by *Edwards v. Carpenter*, *supra*, requiring Petitioner to make an initial showing that he properly exhausted his ineffective assistance of direct appeal counsel claim in order to be able to use this argument as "cause" for the default of his habeas claims. The Court agrees with Respondent that Petitioner did not ever present a claim of ineffective assistance of direct appeal counsel to the Idaho Supreme Court, and, thus, *Edwards v. Carpenter* prevents Petitioner from relying on that claim for the procedural default of his habeas claims.

**MEMORANDUM DECISION AND ORDER - 16**

B.    *Ineffective Assistance of Post-Conviction Counsel under Martinez*

Petitioner brings one ineffective assistance of trial claim in his habeas corpus petition to which *Martinez v. Ryan* may apply, Claim 1(b), which is that trial counsel, Robert Van Idour and William Fitzgerald, were ineffective for failing to raise a Fourth Amendment suppression issue during pretrial proceedings, instead allegedly manipulating and coercing Petitioner into pleading guilty.

The application of the *Strickland* test in this instance means that Petitioner is required to show that post-conviction counsel, Denton Andrews, rendered assistance that was objectively unreasonable, and that, but for his errors, there is a reasonable probability that Petitioner would have received relief on one of the ineffective assistance of trial counsel claims in the state post-conviction proceedings. Initially, the Court reviews whether the representation that Mr. Van Idour and Mr. Fitzgerald provided was ineffective as to Claim 1(b), because, if it was not, then Petitioner suffered no prejudice from Mr. Denton's performance on post-conviction review.

Petitioner's Affidavit regarding the "controlled buy" that led to his arrest contains the following relevant allegations:

> On May 16, 2006, I was arrested for delivery of a controlled substance. In one case I was charged with 5 Methadone pills and another for 4 Methadone pills, a dismissal of 5 Hydrocodone pills. I was advised to plead guilty to the charges and it would run with a short time of sentence to run concurrent with a felony DUI charge I was on parole for. Coming to prison I am finding out that my attorney took advantage of me not knowing the law. I asked him to suppress evidence on the informant on his prior convictions, and one he was still going to court on. I told my attorney that the C.I. was stating a lie of me pulling a gun on him and I had a witness

who was stated to be present at the time. I told him about the warrantless
search of my apartment and seizure of my automobiles' warrantless wire
tapping and video. I told my attorney of the judge who used to represent me
on other charges a few years back and if that should have something to be
critical to my case. I believe my attorney was siding with the prosecuting
officer and had no chance of a fair trial, and was misled. He presented
evidence right quick from the prosecuting officer.

(State's Lodging C-1, p. 6-7.) The Court will consider each of these allegations.

As to his attorney's alleged improper connection to the prosecution, Petitioner
claims: "Mr. Fitzgerald went to the prosecutor's office to get the videos which showed
nothing and he advised me to take a deal, so I knew he was working with the prosecutor."
(C-1, p. 47.) Further, Petitioner alleges, "I was advised by another inmate, Robert
Warden, that he [Fitzgerald] lied on his trial, so I know he failed to do what I asked." (*Id.*)
Obtaining videos from the prosecutor's office is a regular part of defense work; this does
not, by itself, show that Petitioner's attorney was conspiring with the prosecutor to
Petitioner's disadvantage. The statement of Robert Warden is hearsay, as well as
completely vague: it contains no facts about what Mr. Fitzgerald allegedly lied about in
Warden's trial or how that could be related to Petitioner's case. Petitioner presents no
clear allegation of any untruthfulness of Mr. Fitzgerald with regard to their attorney-client
relationship.

Petitioner alleges that he asked Mr. Fitzgerald to check on the informant's current
and past charges. (State's Lodging C-1, p. 47.) Petitioner speculates that Jeremiah
Bostrum, the informant, may have had a habitual offender sentence charge against him
that caused him to be an informant. (Dkt. 27, p. 19-20.) Petitioner has provided no factual

**MEMORANDUM DECISION AND ORDER - 18**

information to show what such an investigation would have uncovered, or how it would have mattered that Bostrum had more or different charges than he admitted to at the preliminary hearing.

Mr. Van Idour (Mr. Fitzgerald's partner) successfully solicited testimony from Bostrum on cross-examination showing that Bostrum had a self-interested motive in providing "helpful" testimony for the prosecution. Bostrum testified that he was working for the police "to get some consideration on some pending cases." (State's Lodging A-2, p. 21.) He elaborated that he had "a couple of misdemeanors that were pretty light that they would dismiss," and that he hoped "to get a couple [of the forgery charges] dropped [so he could] just plead to one," and "to get a withheld judgment." (*Id.*) Bostrum also admitted to having received about two hundred dollars for his informant work. (*Id.* at 23.)

Assuming that Mr. Fitzgerald failed to check on the informant's criminal history and status, the Court finds that Petitioner has not brought forward facts or made a viable argument as to how knowing more about Bostrum would have made a difference in the outcome of his case, especially given that police officers were monitoring the controlled buy that involved the informant. The Court concludes that Petitioner has not shown prejudice.

Petitioner also alleges that his trial counsel failed to investigate or file motions to suppress evidence obtained from the warrantless searches of his apartment and automobiles. Petitioner alleges that detectives had his car towed because he refused to speak with them without a lawyer present. (State's Lodging C-1, p. 46.) Petitioner has not

**MEMORANDUM DECISION AND ORDER - 19**

stated which evidence was seized in these searches, and how it would have affected the outcome of his case. The primary evidence in the record was not derived from the search and seizure: (1) the confidential informant's testimony; (2) the police officer's testimony who set up the purchase between Petitioner and the informant, monitored the purchase, obtained the pills from the informant after the purchase, and debriefed the informant after the purchase (*see* State's Lodging A-2); (3) audio tapes of telephone calls between Petitioner and the informant; and (4) a video tape of Petitioner and the informant together (although it did not show money or an exchange).

Petitioner has not shown that there was any suppression issue that would have actually aided his defense, and thus, the search and seizure are irrelevant. Petitioner would have had knowledge of any incriminating evidence he had in his own apartment and automobile, but he has yet to articulate any particular item that was seized. Rather it appears that Petitioner simply believes that the searches and seizures were wrongful; the proper forum to adjudicate such a claim would have been to file a civil rights action within the statute of limitations period. No cause or prejudice resulted from Mr. Fitzgerald's handling of the search and seizure issues.

Petitioner also takes issue with Mr. Fitzgerald's assessment of the video and audio tapes. Mr. Fitzgerald thought that the audio tapes did not contain much useful evidence. Petitioner argues that the video showed only Petitioner picking up the informant, but did not show an exchange of pills for money. Mr. Fitzgerald said the video would be enough to convict Petitioner. (*Id.*, p. 47.) Petitioner argued that "there was no money for

**MEMORANDUM DECISION AND ORDER - 20**

evidence; they had 8 or 7 Methadone pills that C.I. could have gotten or received from them." (*Id.*)

Petitioner's argument is nothing more than a disagreement with the strategy and experience-informed opinion of his counsel. Petitioner has offered nothing to show that he knew more about whether Petitioner could be convicted in a controlled buy situation than his experienced counsel, or that his counsel's advice on this point amounted to incompetence under prevailing professional norms. Thus, no deficient performance is evident from the record.

Petitioner next faults his counsel for not obtaining a change of venue, or change of judge, because Judge Jeff Brudie was previously a public defender who had represented Petitioner on unrelated charges years earlier. However, the rule for conflicts of interest in Idaho is that "a judge is only disqualified from presiding over the same case in which he previously represented a party, not a subsequent unrelated one." (State's Lodging C-1, p. 60, citing *State v. Zamora*, 933 P.2d 106 (1997). Here, because Judge Brudie represented Petitioner in an unrelated criminal matter several years earlier, the *Zamora* rule did not apply to bar Judge Brudie from presiding over Petitioner's new criminal case. The Court of Appeals noted that Petitioner did not provide facts showing that Judge Brudie's representation of him in a prior case created a bias or conflict that could have prejudiced Petitioner's case. (State's Lodging D-5, p. 6.) And, like the items taken from Petitioner's apartment, Petitioner was in a position to provide such facts, because he, himself, had

**MEMORANDUM DECISION AND ORDER - 21**

participated in the prior representation. However, no facts were forthcoming in any of Petitioner's cases.

Neither has Petitioner shown that facts existed to support a "change of venue." Idaho judges have authority, under Idaho Code § 19–1801 and Idaho Criminal Rule 21, to change venue where a defendant shows "a 'reasonable likelihood' exists that pretrial publicity has affected the impartiality of prospective jurors." *State v. Hall*, 727 P.2d 12551257 (Idaho Ct. App. 1986). Allegations that a judge is biased or has a conflict of interest are not among those for which a change of venue is granted. (*See* State's Lodging D-5, p. 6. "The State also correctly pointed out that a "change of venue" would not have resulted in a different presiding judge, I.C.R. 21(c).") Hence, the Court concludes that no deficient performance and no prejudice resulted from Mr. Fitzgerald's decision to not pursue this issue.

Another issue raised by Petitioner concerns the fact that Bostrom, the informant, alleged that three to five weeks prior to the incidents that form the basis of the criminal charges, Petitioner had sold drugs to Bostrum and had threatened him by putting a gun to his head. (Petitioner's Demur Response, Dkt. 27, p. 19, noting that this statement is included in a Lewiston Police Supplement Narrative.) Petitioner alleges that a witness, Jeannette Sinner, was with him when he sold the drugs to the informant, and she offered to testify on his behalf that he did not pull a gun on the informant. Petitioner alleges that he asked Mr. Fitzgerald to suppress the gun allegation made by the informant. (State's Lodging D-1, p. 47.)

**MEMORANDUM DECISION AND ORDER - 22**

Petitioner has failed to make any connection between the gun allegation and the two drug delivery charges. The gun allegation did not occur during the incidents that formed the basis of the charges and was not an element of the crime of delivery, and, thus, it had nothing to do with whether there was sufficient evidence upon which Petitioner could be convicted of two delivery charges. The gun allegation was not mentioned by the judge in sentencing. (State's Lodging A-2, pp. 108-119.) Therefore, there was no deficient performance or prejudice suffered.

Rather, Petitioner is now concerned that the gun allegation is affecting his ability to be paroled. Petitioner states that the "Parole Commission used that I pulled a gun on the C.I. to deny me any type of privilege. That should have been stricken from the record." (State's Lodging C-1, p. 46.) He refers to a parole hearing of April 7, 2009. The minutes from that hearing state:

> The subject sold drugs to a confidential informant when he committed this delivery offense. He denies he held a gun to the informant's head and told him he'd better not be a policeman. The subject denied all of this.

(State's Lodging F-7, Exhibits (footnoted added).) However, the Parole Commission's use of the gun allegation at a later date for parole purposes is not reflective of whether trial counsel performed ineffectively when advising Petitioner to plead guilty of delivery charges unrelated to the gun incident.

Petitioner also alleges that his counsel relied only on evidence from the police officer and did not discover or raise issues at an appropriate time. However, Petitioner has

**MEMORANDUM DECISION AND ORDER - 23**

failed to provide facts showing what more could have been done and what prejudice

resulted. At the change of plea hearing, Mr. Fitzgerald was asked whether he had

sufficient time to discuss the ramifications of the case with Petitioner. Mr. Fitzgerald

replied:

> I have, Your Honor. We have reviewed the police reports and we've reviewed all of the videos, the tape recordings of body wires, the recordings of telephone calls and other material that was available in this case. We have gone over defenses that would be available to that, the potential consequences to Mr. McCormack of entering any plea of guilty to this and we have looked to see if there was any violation of his constitutional rights. And, Your Honor, there are some things that occurred in this case that I would say could be objectionable. In – in the sense of the conduct, but I don't think it yielded any relevant evidence to the case and had no impact on the facts that would be presented in the courtroom.
>
> So in terms of whether or not there was any violation of his constitutional rights that would affect the outcome of a trial, no, there was not.
>
> And discussing all of those factors with Mr. McCormack, we came to the – and with Ms. Dickerson, as well, we came to the plea bargain agreement that we have placed before the court.

(State's Lodging A-2, pp. 86-87.)

The foregoing explanation demonstrates that Mr. Fitzgerald was aware of the

issues, recognized that the procedures may have been erroneous, but concluded that the

errors would not have affected the elements of the crime or the evidence at trial. Mr.

Fitzgerald's response also shows that he reviewed the evidence, advised Petitioner on his

possible defenses to a controlled-buy delivery charge, and worked to craft a plea

**MEMORANDUM DECISION AND ORDER - 24**

agreement to obtain a fair sentence (one of the charges was dismissed, and the sentence was concurrent to the DUI sentence Petitioner was already serving).

Accordingly, based on all of the foregoing, the Court concludes that Petitioner has not shown that trial counsel performed ineffectively on the issues that underlie the procedurally defaulted claims raised in the habeas corpus petition. As a result, Petitioner's post-conviction counsel was not ineffective for the manner in which these claims were handled on post-conviction review.

### C.   *State Court's Dismissal of Successive Post-Conviction Action*

Petitioner also argues that, in the second post-conviction action, he was not given an adequate opportunity to demonstrate how counsel's representation in the initial proceeding was ineffective. He was not granted an evidentiary hearing, and he argues that his second post-conviction appellate counsel refused to raise any issues on appeal, leaving Petitioner pro se. Petitioner argues that the Idaho Court of Appeals failed to address his arguments, and failed to address the grounds upon which the subsequent dismissal rested.

However, the Court finds that the record from the trial court proceedings is sufficient to show that trial counsel's performance under the circumstances was not so deficient that he failed to function as the "counsel" guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Many of Petitioner's complaints about his counsel have nothing to do with the elements of the crimes with which he was charged. Petitioner also received several benefits from the plea bargain, including dismissal of one of the charges and a concurrent sentence.

**MEMORANDUM DECISION AND ORDER - 25**

**D.**    *Ineffective Assistance of Post-Conviction Appeal Counsel*

Petitioner also argues that post-conviction appellate counsel argued only change of venue and conflict of interest when appealing the first post-conviction dismissal, rather than including all of the claims presented in the Habeas Corpus Petition here. Petitioner alleges that he instructed his appellate counsel in the appeal of the first post-conviction action to file a petition for review, but counsel did not.

Petitioner also argues that post-conviction appellate counsel in his second post-conviction action was ineffective.  Attorney Dennis Benjamin, an experienced criminal law attorney, represented Petitioner in the second post-conviction appeal. He thoroughly reviewed the case, prepared a detailed analysis of why he believed no appeal was warranted, and wrote Petitioner a very thorough and well-reasoned letter regarding his conclusion that no appealable issue could be raised. (Dkt. 27, pp. 33-35.)

Regardless of whether either post-conviction appellate counsel performed ineffectively, there is no legal basis for excusing procedural default based on the ineffectiveness of post-conviction appellate counsel. The United States Supreme Court's holding in *Martinez* does not apply to alleged ineffectiveness by post-conviction *appellate* counsel.

In *Coleman v. Thompson*, the United States Supreme Court established the general rule that an attorney's errors on appeal from an initial-review collateral proceeding do not qualify as cause for a procedural default, and, in *Martinez*, the Supreme Court reaffirmed

that holding, explicitly exempting post-conviction appeals from the narrow exception it

carved out from *Coleman*:

> The rule of *Coleman* governs in all but the limited circumstances
> recognized here. The holding in this case does not concern attorney errors
> in other kinds of proceedings, *including appeals from initial-review
> collateral proceedings, second or successive collateral proceedings*, and
> petitions for discretionary review in a State's appellate courts.

*Martinez*, 132 S.Ct. at 1320 (emphasis added, citation omitted). Therefore, Petitioner

cannot demonstrate cause based on the alleged ineffectiveness of postconviction appellate

counsel.

### E.   *Successive Post-Conviction Petition as Exhaustion*

Petitioner argues that because he presented all of his federal claims in his

successive petition, which was pursued through the level of the Idaho Supreme Court, his

claims are, in fact properly exhausted. (Dkt, p. 8.) However, because the Idaho Supreme

Court determined they were improperly presented, they still remain procedurally

defaulted.

Petitioner argues that the import of *Martinez v. Ryan* is that every procedurally

defaulted claim is the result of an attorney having performed ineffectively by failing to

raise the claim in state court. (Dkt. 34, p. 8.) This misconstrues the law. A meritorious

federal claim may be procedurally defaulted because an attorney failed to raise it, but if

the failure to raise it was a reasonable strategic decision, then the attorney performance

was not deficient. Similarly, a meritless federal claim may be procedurally defaulted

because an attorney failed to raise it, but, because the claim was meritless, it would have

**MEMORANDUM DECISION AND ORDER - 27**

been neither deficient performance nor prejudicial for the claim to have been omitted. In addition, *Martinez* applies only to ineffective assistance of post-conviction counsel as to the initial post-conviction application, not the appeal of that action, or any actions of other counsel in appeals or successive post-conviction applications. The Court concludes that Petitioner has not brought forward sufficient facts upon which cause and prejudice can be applied to permit the Court to hear the merits of his claims.

**6.     Law Governing Miscarriage of Justice**

If a petitioner cannot show cause and prejudice, he can still bring the claim in a federal habeas petition if he demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). A miscarriage of justice means that a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To show a miscarriage of justice, Petitioner must make a colorable showing of factual innocence, *Herrera v. Collins*, 506 U.S. 390, 404 (1993); *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995), supporting his allegations of constitutional error with new reliable evidence that was not presented at trial, *Schlup v. Delo*, 513 U.S. 298, 324 (1995). For example, types of evidence "which may establish factual innocence include credible declarations of guilt by another, *see Sawyer v. Whitley*, 505 U.S. 333, (1992), trustworthy eyewitness accounts, *see Schlup*, 513 U.S. at 331, and exculpatory scientific evidence." *Pitts v. Norris*, 85 F.3d 348, 350-51 (8th Cir. 1996).

Where the defendant pleaded guilty and did not have the evidence in his case evaluated by a jury, the petitioner must show that, based on all of the evidence, "it is more likely than not that no reasonable juror would have found Petitioner guilty. . . ." *Van Buskirk v. Baldwin*, 265 F.3d 1080, 1084 (9th Cir. 2001), *citing Schlup v. Delo*, 513 U.S. at 327; *Jaramillo v. Stewart*, 340 F.3d 877 (9th Cir. 2003) (leaving open the question of whether AEDPA raised the *Schlup* "more likely than not" standard to a "clear and convincing evidence" standard).

Specifically as to cases in which petitioners challenge their guilty pleas, the United States Supreme Court stated:

> [T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

## 7.    Discussion of Miscarriage of Justice

Petitioner admitted at the change of plea hearing that he was guilty of the offense of selling the prescription drugs. (State's Lodging A-2, pp. 85-88.) At the sentencing hearing, Petitioner stated: "I never sold these pills to gain any type of a satisfaction, pleasure for myself, it was for my needs of my home." The judge then asked Petitioner, "It was your medication, Mr. McCormack?" Petitioner answered, "Yes. And I was for – to pay for my bills that I had. that's the only reason I sold these. I didn't think it was –

you know really anything that serious, but I found out it was and I – you know, I'm regretful for doing that." (State's Lodging A-2, p. 113.)

Therefore, nothing in the record reflects that Petitioner is actually innocent. Petitioner has provided this Court with a May 3, 2011, letter from the Idaho State Police (ISP), which is a statewide announcement of "Possible Brady/Giglio Material." (Dkt. 27, p. 5.) The letter states that, on February 24, 2011, it was discovered that an ISP Forensic Laboratory scientist, Skyler Anderson, had maintained an ongoing unauthorized quantity of controlled narcotics for display purposes, outside proper practices and without proper documentation, tracking, and auditing. During yearly audits, Anderson hid the display drugs from auditors to avoid detection of this practice. (Dkt. 27, p. 17.)

This does not aid in Petitioner's actual innocence argument, because Petitioner actually identified the drugs that he sold to Bostrum as his own prescription medication. Therefore, any handling by the lab could not have affected the fact that the drugs originated from Petitioner's prescription bottles. Accordingly, Petitioner's request for discovery, request for an evidentiary hearing, and request for appointment of counsel are denied.

## REVIEW OF THE CLAIMS AND THE COURT'S DECISION
## FOR PURPOSES OF CERTIFICATE OF APPEALABILITY

Upon dismissal or denial of a habeas corpus petition, the Court is required to evaluate the claims within the petition for suitability for issuance of a certificate of appealability (COA). 28 U.S.C. § 2253(c)(1)(A); *Miller-El v. Cockrell*, 537 U.S. 322, 336

**MEMORANDUM DECISION AND ORDER - 30**

(2003); Rule 11(a), Rules Governing Section 2254 Cases. A petitioner's appeal cannot proceed without obtaining a COA and filing a timely notice of appeal.

A COA will issue only when a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that, under this standard, a petitioner must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

When a court has dismissed a petition or claim on procedural grounds, in addition to showing that the petition "states a valid claim of the denial of a constitutional right," as explained above, the petitioner must also show that reasonable jurists would find debatable whether the court was correct in its procedural ruling. *Slack,* 529 U.S. at 484. The COA standard "requires an overview of the claims in the habeas petition and a general assessment of their merits," but a court need not determine that the petitioner would prevail on appeal. *Miller-El*, 537 U.S. at 336.

Here, the Court has dismissed Petitioner's claims on procedural grounds. The Court finds that additional briefing on the COA is not necessary. Having reviewed the record thoroughly, the Court concludes that reasonable jurists would not find debatable the Court's decision on the procedural issues and that the issues presented are not adequate to deserve encouragement to proceed further. The Court has carefully searched

**MEMORANDUM DECISION AND ORDER - 31**

the record and reviewed the law independently of what Respondent has provided to satisfy itself that justice has been done in this matter where Petitioner is representing himself pro se and has limited access to legal resources. As a result of all of the foregoing, the Court declines to grant a COA on any issue or claim in this action.

If he wishes to proceed to the United States Court of Appeals for the Ninth Circuit, Petitioner must file a notice of appeal in this Court **within thirty (30) days after entry of this Order**, and he may file a motion for COA in the Ninth Circuit Court of Appeals, pursuant to Federal Rule of Appellate Procedure 22(b)(2).

## ORDER

**IT IS ORDERED:**

1.      Respondent's Motion to Dismiss (Dkt. 25) is GRANTED. Petitioner's claims are procedurally defaulted and subject to dismissal with prejudice.

2.      Petitioner's Request to Utilize Discovery Procedures, Request for an Evidentiary Hearing, and Request for Appointment of Counsel (Dkt. 27) are DENIED.

3.      The Court will not grant a Certificate of Appealability in this case. If

Petitioner chooses to file a notice of appeal, the Clerk of Court is ordered to

forward a copy of this Order, the record in this case, and Petitioner's notice

of appeal, to the United States Court of Appeals for the Ninth Circuit.

DATED:  **September 19, 2012**

Honorable Edward J. Lodge
U. S. District Judge

**MEMORANDUM DECISION AND ORDER - 33**